1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

11

RENEE HARRIS BRUNELLE,

CASE NO. 06CV2755 JLS (CAB)

12

Plaintiff,

13

vs.

14

COMPUCOM SYSTEMS, INC.,[1]

15

Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

(Doc. No. 17)

16

17

18

        Presently before the Court is Compucom Systems, Inc.'s ("defendant") motion for

summary judgment.  (Doc. No. 17.)  For the reasons stated below, the Court grants the motion.

19

                                              **BACKGROUND**

20

**A.      Factual Background**

21

        During the period in question, defendant contracted with Pfizer, Inc. to provide information

technology solutions at Pfizer's La Jolla campus.  (Ruwe Decla. ¶ 2; Collins Decla. ¶ 2.)  Lisa

22

Collins became defendant's service delivery manager at the La Jolla location in June 2003.

23

(Collins Depo., at 11.)  Beginning in January 2004, Renee Harris Brunelle ("plaintiff"), an

24

African-American female, began working under Collins's supervision as a part-time Junior

25

Technician.  (Brunelle Depo., at 14.) Plaintiff had responded to defendant's online advertisement

26

27

28

---

        [1] Compucom Systems, Inc. is erroneously sued as "GE Capital Information Technology Solutions, Inc."

1   and interviewed with Collins. (Brunelle Decla. ¶ 1; Collins Depo., at 20-21.)  After the interview,

2   Collins directed plaintiff to Manpower Professional ("Manpower"), a temporary staffing agency,

3   to fill out Manpower's employment application and undergo a drug screen and background check.

4   (Def. Notice of Lodgment, Exhibit 2; Collins Depo., at 20.)  Throughout the period when plaintiff

5   rendered services to defendant, she was paid by Manpower.  (Brunelle Depo., at 72.)

6       In March 2004, Collins offered to change plaintiff's employment to a full-time position as

7   Video Conference Technician.  (Brunelle Decla. ¶ 3.)  Plaintiff accepted the full-time position.

8   (Id.; Brunelle Depo., at 68.)  Collins emailed Manpower, "As of March 15th, [plaintiff] will be a

9   full time contractor here at Pfizer. . . . Her rate of pay should change to $18.00/hour."  (Collins

10  Decla. ¶ 4.)  In the same conversation, plaintiff alleges that Collins also offered a future

11  employment position as Video Conference Technician to begin in January 2005, contingent on

12  defendant's renewal of its contract with Pfizer.  (Brunelle Decla. ¶ 4.)  In the future position,

13  plaintiff would receive payment directly from defendant, along with defendant's benefits package.

14  (Id. ¶ 4.)  Plaintiff claims to have accepted this offer of future employment also.  (Id. ¶ 5.)

15  Defendant never memorialized this employment offer in writing.  (Brunelle Depo., at 71.)  The

16  contract between defendant and Pfizer was renewed for 2005.  (Opp., at 2.)

17      In August 2004, Ryan Ruwe, a Caucasian male, succeeded Collins as plaintiff's supervisor.

18  (Ruwe Decla. ¶ 3.)  Videoconference technicians under Ruwe's supervision kept their time,

19  including a record of the time when they began work each day, using a computer-based system.

20  (Ruwe Depo., at 39.)  All employees at Pfizer's La Jolla facility gained entry to the building by

21  swiping a Pfizer-issued security badge at an electronic card reader.  (Id. at 41.)  On occasion, when

22  groups of employees entered the building, one employee would swipe the security badge and allow

23  other employees to enter without swiping their badges.  (Id. at 44; Soto Depo., at 60.)  Also,

24  security guards would occasionally admit employees without swiping their badges.  (Ruwe Depo.,

25  at 44-45; Brunelle Decla. ¶ 16.) Plaintiff also claims to have gained entry to buildings on Pfizer's

26  La Jolla campus without using her security badge when the security system was inoperative or her

27  badge did not work.  (Brunelle Decla. ¶ 16.)  Gaining entry to the Pfizer facility without swiping

28  one's individual badge violated Pfizer security protocols.  (Ruwe Depo., at 43-44.)

1  Ruwe reviewed his employees' time records to ensure that they worked the expected

2  number of hours and recorded the hours that they actually worked.  (Ruwe Depo., at 37-38.)  In

3  August 2004, Ruwe reviewed plaintiff's time records and determined that he had not seen plaintiff

4  at work during times when she claimed to be working.  (Ruwe Decla. ¶ 10.) Specifically, Ruwe

5  noted that plaintiff recorded her start time as 6:00 a.m. on August 16 and 18-20, 2004.  (Ruwe

6  Decla. ¶ 11 & Exhibit B.)  However, according to Pfizer's building access logs, plaintiff first

7  swiped her security badge later than 6:00 a.m.  (Id. ¶ 11 & Exhibit A.)  In particular, plaintiff first

8  swiped her badge at 6:31 a.m. on August 18 and 6:50 a.m. on August 20.  (Id., Exhibit A, at D-

9  0002.)  Ruwe then informed Manpower that defendant was ending plaintiff's placement.  (Id. ¶

10  12.)  Manpower contacted plaintiff to direct her not to return to the Pfizer campus.  (Brunelle

11  Depo., at 52-53.)  Plaintiff entered the Pfizer building for the last time on August 31, 2004.  (Ruwe

12  Decla., Exhibit B, at D-0008.)

13  **B.     Procedural Background**

14  On November 29, 2006, plaintiff filed this action in San Diego County Superior Court for

15  breach of contract and business torts arising from the termination of her employment.  Plaintiff

16  alleges that defendant agreed to employ plaintiff as a videoconference technician in 2005 if

17  defendant secured an IT contract with Pfizer.  (Compl., at 3-4.) Despite securing the contract,

18  defendant allegedly failed to employ plaintiff on the agreed-upon terms.  (Id.)  Plaintiff further

19  alleges that defendant falsely told Manpower that plaintiff engaged in time theft when, in fact,

20  plaintiff recorded her time as Collins had directed her.  (Id. at 6-9.)

21  Defendant removed the action to this Court on December 21, 2006.  (Notice of Removal.)

22  On August 22, 2007, defendant moved for summary judgment on each of plaintiff's five

23  causes of action: breach of an oral employment contract, fraud, intentional infliction of emotional

24  distress, tortious interference, and negligence.  (Doc. No. 17.)  On October 12, 2007, plaintiff filed

25  her opposition, requesting a continuance to allow further discovery.  (Doc. No. 29.)  After a

26  hearing on plaintiff's request, the Court granted the continuance by written Order on November 2,

27  2007.  (Doc. No. 34.)

28

06cv2755

1    Plaintiff filed her Court-ordered supplemental opposition on December 7, 2007.  (Doc. No.

2    39.)  The supplemental opposition voluntarily dismissed plaintiff's cause of action for fraud.  (Id.

3    at 3.)  Defendant filed its reply on December 14, 2007.  (Doc. No. 43.)  The Court held oral

4    argument on the motion on Tuesday, January 22, 2008, and the motion is now appropriate for

5    disposition.

6                                                **LEGAL STANDARD**

7         Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates

8    the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  See

9    Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material when,

10   under the governing substantive law, it could affect the outcome of the case.  Anderson v. Liberty

11   Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A

12   dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return

13   a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

14        A party seeking summary judgment always bears the initial burden of establishing the

15   absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving party can

16   satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the

17   nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a

18   showing sufficient to establish an element essential to that party's case on which that party will

19   bear the burden of proof at trial.  Id. at 322-23.

20        If the moving party meets this initial burden, the nonmoving party cannot defeat summary

21   judgment merely by demonstrating "that there is some metaphysical doubt as to the material

22   facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Triton

23   Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citing Anderson, 477 U.S. at

24   252) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position

25   is not sufficient.").  Rather, the nonmoving party must "go beyond the pleadings and by her own

26   affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate

27   'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324 (quoting

28   Fed. R. Civ. P. 56(e)).

1 **DISCUSSION**

2 **A.      Breach of Oral Contract**

3          1.      <u>Contract formation</u>

4          In moving for summary judgment on plaintiff's claim for breach of an oral contract for

5 employment, defendant first argues that plaintiff cannot prove formation of a contract.  The

6 parties' consent (i.e., "mutual assent") is an essential element of a contract.  Cal. Civ. Code §

7 1550; <u>Hynix Semiconductor Inc. v. Rambus Inc.</u>, 441 F. Supp. 2d 1066, 1074 (N.D. Cal. 2006);

8 <u>Donovan v. RRL Corp.</u>, 26 Cal. 4th 261, 270 (2001).  Mutual assent means that "the parties all

9 agree on the same thing in the same sense."  Cal. Civ. Code § 1580; <u>Bustamante v. Intuit, Inc.</u>, 141

10 Cal. App. 4th 199, 208 (Cal. Ct. App. 2006); <u>Weddington Prods., Inc. v. Flick</u>, 60 Cal. App. 4th

11 793, 811 (Cal. Ct. App. 1998).  "'The existence of mutual [assent] is determined by objective

12 rather than subjective criteria, the test being what the outward manifestations of consent would

13 lead a reasonable person to believe.'"  <u>Flick</u>, 60 Cal. App. 4th at 811 (quoting <u>Meyer v. Benko</u>, 55

14 Cal. App. 3d 937, 943 (Cal. Ct. App. 1976)).  Those outward manifestations include "'the

15 reasonable meaning of [the parties'] words and acts, and not their unexpressed intentions or

16 understandings.'"  <u>Bustamante</u>, 141 Cal. App. 4th at 208 (quoting <u>Alexander v. Codemasters Group</u>

17 <u>Ltd.</u>, 104 Cal. App. 4th 129, 141 (Cal. Ct. App. 2002)).

18          Defendant argues the absence of mutual assent in this case because there is supposedly no

19 evidence of an agreement between defendant and plaintiff.  (Memo. ISO Motion, at 7.)  Defendant

20 goes to great lengths to show that plaintiff remained an employee of Manpower, rather than

21 defendant, when plaintiff began the videoconferencing position in March 2004.  In opposition,

22 plaintiff argues that the precise identity of her employer during the January–August 2004 is

23 irrelevant to the alleged oral contract for future employment that would begin in 2005 with

24 defendant.  By providing an entirely different factual account of the conversation between plaintiff

25 and Collins in March 2004, plaintiff makes it impossible for the Court to find an absence of mutual

26 assent, as a matter of law.  If Collins offered the full-time position with defendant beginning

27 January 2005 in the way that plaintiff claims, a reasonable jury could find that the parties' outward

28 manifestations of consent gave rise to mutual assent.

1    Under the authority of <u>Eisenberg v. Alameda Newspapers</u>, defendant claims that the

2  assertions of plaintiff's declaration are too conclusory to manufacture a triable issue of fact on the

3  issue of whether a contract existed.[2]  74 Cal. App. 4th 1359 (Cal. Ct. App. 1999).  <u>Eisenberg</u>,

4  however, is distinguishable because that plaintiff was arguing not for the existence of a contract,

5  but for an implied term that the employer would terminate only for cause.  <u>Id.</u> at 1386.

6  Where"overwhelming evidence" supported the statutory presumption of at-will employment, the

7  court refused to deny the employer's motion for summary judgment based on vague allegations

8  that the employer implied a promise not to terminate without good cause.  <u>Id.</u> at 1387-89.  In the

9  case at bar, the parties are instead offering competing versions of the facts concerning a particular

10  conversation.  California has no statutory presumption against contract formation, and defendant

11  has not offered "overwhelming evidence" that the parties did not form a contract for future

12  employment.

13         2.    The nature of the parties' contract

14    Presuming (without conceding) that the parties formed an oral contract for future

15  employment, defendant next argues that, because the contract was for employment at-will,

16  defendant did not breach the contract by refusing to employ plaintiff despite obtaining the 2005

17  contract with Pfizer.  "An employment, having no specified term, may be terminated at the will of

18  either party on notice to the other."  Cal. Labor Code § 2922; <u>Ali v. L.A. Focus Publ'n</u>, 112 Cal.

19  App. 4th 1477, 1489 (Cal. Ct. App. 2003).  "If an employee is 'at-will," the employer may 'act

20  peremptorily, arbitrarily, or inconsistently [in terminating the employee], without providing

21  specific protections such as prior warning, fair procedures, objective evaluation, or preferential

22  reassignment.'"  <u>Agosta v. Astor</u>, 120 Cal. App. 4th 596, 603-04 (Cal. Ct. App. 2004) (quoting <u>Guz</u>

23  <u>v. Bechtel Nat'l, Inc.</u>, 24 Cal. 4th 317, 350 (Cal. 2000)).  Therefore, "either party may terminate

24  the employer-employee relationship without cause."  <u>Stevenson v. Superior Court</u>, 16 Cal. 4th 880,

25  887 (Cal. 1997), and an employer needs no reason to terminate an at-will employment, <u>Sneddon v.</u>

26  <u>ABF Freight Sys.</u>, 489 F. Supp. 2d 1124, 1131 (S.D. Cal. 2007).

27

28         [2] The parties have each filed evidentiary objections to the other's statement of undisputed
material facts.  In deciding the present motion, the Court has considered only admissible evidence.

- 6 -                                                06cv2755

1    Here, plaintiff does not dispute that any contract between plaintiff and defendant was for

2  employment at-will.  Therefore, plaintiff does not rebut the evidence that defendant implemented

3  an at-will policy prior to January 2004 and conditioned employment with defendant on agreement

4  to that policy.  (Collins Decla. ¶ 3; Ruwe Decla. ¶ 5.)  Plaintiff conceded in her deposition that

5  Collins did not specify a duration for the term of plaintiff's future employment.  (Brunelle Depo.,

6  at 75.)  Plaintiff does not allege any public policy restricting defendant's right to discharge her.

7  Foley v. Interactive Data Corp., 47 Cal. 3d 654, 665 (Cal. 1988); Franklin v. Monadnock Co., 151

8  Cal. App. 4th 252, 265 (Cal. Ct. App. 2007).  Plaintiff presents no evidence of an express or

9  implied agreement to terminate plaintiff only for good cause.  Guz, 24 Cal. 4th at 336; Foley, 47

10  Cal. 3d at 680.  At oral argument, plaintiff's counsel described this claim as one for "anticipatory

11  breach"; however, that recasting of the cause of action does not change the fact of what was

12  breached, i.e., a contract for employment at-will. Therefore, the undisputed facts establish that any

13  oral contract between plaintiff and defendant was for at-will employment, and defendant's

14  termination of that employment in advance did not breach that contract, as a matter of law.  The

15  Court grants defendant's motion for summary judgment as to plaintiff's claim for breach of oral

16  contract.

17  **B.    Fraud**

18    As discussed supra, plaintiff voluntarily dismissed her second cause of action for fraud in

19  her opposition memorandum.

20  **C.    Intentional Infliction of Emotional Distress**

21    In moving for summary judgment on plaintiff's third claim for intentional infliction of

22  emotional distress ("IIED"), defendant argues that its conduct was not outrageous, as a matter of

23  law.  IIED "'is committed when defendant's conduct is intentionally intrusive and outrageous and

24  has a severe and traumatic effect on the plaintiff's emotional tranquility.'" Kraslawsky v. Upper

25  Deck Co., 56 Cal. App. 4th 179, 194 (Cal. Ct. App. 1997) (quoting Semore v. Pool, 217 Cal. App.

26  3d 1087, 1095 (Cal. Ct. App. 1990)).  "To be outrageous, the conduct 'must be so extreme as to

27  exceed all bounds of that usually tolerated in a civilized community.'" Garamendi v. Golden

28  Eagle Ins. Co., 128 Cal. App. 4th 452, 480 (Cal. Ct. App. 2005) (quoting Potter v. Firestone Tire

1 & Rubber Co., 6 Cal. 4th 965, 1001 (Cal. 1993)). A court may find outrageous conduct where the

2 defendant "(1) abuses a relation or position which gives him a power to damage the plaintiff's

3 interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts

4 intentionally or unreasonably with the recognition that the acts are likely to result in illness

5 through mental distress." Cole v. Fair Oaks Fire Prot. Dist., 43 Cal. 3d 148, 155 n.7 (Cal. 1987).

6       The Court finds that plaintiff's allegation that defendant falsely informed Manpower of

7 plaintiff's time theft, resulting in the termination of plaintiff's employment at Pfizer's La Jolla

8 campus, does not satisfy the legal standard for outrageous conduct. Of the cases cited by

9 defendant, the most relevant is Janken v. GM Hughes Electronics, 46 Cal. App. 4th 55 (Cal. Ct.

10 App. 1996). There, the California Court of Appeal affirmed the dismissal of individual

11 supervisors from an action alleging that the employer terminated or forced the resignation of

12 plaintiffs above age 40 without good cause. Id. at 62, 80. The court reasoned that plaintiff's

13 allegations failed to satisfy the "outrageous conduct" element of the IIED claim:

14       Managing personnel is not outrageous conduct beyond the bounds of human
         decency, but rather conduct essential to the welfare and prosperity of society. A
15       simple pleading of personnel management activity is insufficient to support a claim
         of [IIED], even if improper motivation is alleged. If personnel management
16       decisions are improperly motivated, the remedy is a suit against the employer for
         discrimination.

17

18 Id. at 80. Applied to these facts, the Court finds that Ruwe did not act outrageously. In light of

the undisputed discrepancies in plaintiff's time records,[3] Ruwe instead engaged in "personnel
19
management activity" by contacting Manpower to indicate that defendant no longer needed
20
plaintiff's services at the Pfizer facility. Although plaintiff alludes to a discriminatory motive in
21
her opposition,[4] plaintiff does not bring a suit for discrimination, which, per Janken, is the correct
22
legal remedy for improperly motivated personnel management decisions. Therefore, the Court
23
grants defendant's motion for summary judgment on plaintiff's IIED claim.
24

25

26       [3] At oral argument, plaintiff's counsel expressed confusion regarding the Court's use of the
phrase "undisputed discrepancies." By that term, the Court means the fact that plaintiff recorded the
27 beginning of her workday at 6:00 a.m., but did not swipe her building card to enter Pfizer's facility
until 30-50 minutes later on August 18 and 20, 2004.

28       [4] "There are also racial and gender components," plaintiff vaguely alleges, reminding the Court
that she is an African-American female, and Ruwe is a Caucasian male. (Opp., at 3-4.)

**D.     Negligence**

In moving for summary judgment on plaintiff's fifth claim for negligence, defendant first attempts to recharacterize this cause of action as an artfully pled claim for defamation.  Even if the language of the complaint, taken in a vacuum, might support the recharacterization for which defendant argues, plaintiff's opposition makes clear that she is alleging a bona fide negligence case:

> [a]lthough [p]laintiff was an at-will employee in August of 2004, Ruwe had a duty to conduct a reasonable investigation before telling Manpower that [p]laintiff was not to work for [d]efendant any more because her reported work hours did not correlate with the reported use of her security badge and that, in other words, she engaged in time-theft.  Both Ruwe's investigation and his accusation of time theft were negligent.

(Opp., at 5.)  Therefore, the Court does not reach defendant's argument that this claim is time-barred by the statute of limitations.

However, as defendant argues, no legal authority supports the proposition that defendant "had a duty to conduct a reasonable investigation that gives rise to a claim for 'general' negligence."  (Reply, at 10.)  Case law imposing an obligation to conduct a reasonable investigation before terminating an employee arises only in the context of the breach of an implied contract not to terminate without good cause.  E.g., Cotran v. Rollins Hudig Hall Int'l, Inc., 17 Cal. 4th 93, 95-96 (Cal. 1998).  In at-will employment contracts, however, plaintiff's remedies are exclusively contractual, and the plaintiff cannot recover in tort.  See Guz, 24 Cal. 4th at 351-52 (where the contract lacked an implied promise not to terminate without good cause, rejecting claim for breach of the implied covenant of good faith and fair dealing, and limiting plaintiff to the terms of the parties' agreement).  Having already granted summary judgment to defendant on the claim for breach of contract, the Court finds that plaintiff's negligence claim likewise fails, as a matter of law.

**E.     Tortious Interference with Economic Advantage**

In moving for summary judgment on plaintiff's fourth claim for tortious interference with prospective economic advantage, defendant points out that plaintiff alleges a cause of action for intentional interference.  (See Compl., at 7 ("Defendant's intentional acts were designed to disrupt of sever the economic relationship of [p]laintiff with Manpower[.]"))  To plead such a claim

06cv2755

1  successfully, "a plaintiff must plead that the defendant engaged in an act that is wrongful apart

2  from the interference itself." <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1154

3  (Cal. 2003); <u>Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.</u>, 138

4  Cal. App. 4th 1215, 1220 (Cal. Ct. App. 2006).  "[A]n act is independently wrongful if it is

5  unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or

6  other determinable legal standard." <u>Korea Supply Co.</u>, 29 Cal. 4th at 1159; <u>Stevenson Real Estate</u>

7  <u>Servs.</u>, 138 Cal. App. 4th at 1220.

8      At oral argument, plaintiff's counsel argued that the claim only requires an independent

9  wrong, even if that wrong is not pled as a separate cause of action.  However, rather than actually

10  allege a specific wrongful act (aside from the other, failed causes of action), plaintiff merely

11  provides a laundry list of conclusory allegations: "[t]he false accusations were motivated by

12  Ruwe's racial and/or gender bias and/or discrimination and/or slander and/or constituted

13  negligence, intentional infliction of emotional distress or slander[.]" (Opp., at 5.)  At trial, plaintiff

14  would have to "plead <u>and</u> <u>prove</u> as part of its case-in-chief that the defendant . . . engaged in

15  conduct that was wrongful by some legal measure other than the fact of interference itself." <u>Della</u>

16  <u>Penna v. Toyota Motor Sales, U.S.A., Inc.</u>, 11 Cal. 4th 376, 393 (Cal. 1995) (emphasis added).

17  Reciting various causes of action does not create a material question of fact as to whether

18  defendant acted wrongfully, above and beyond the interference itself.  Therefore, the Court grants

19  summary judgment on plaintiff's claim for intentional interference with economic advantage.[5]

20                                    **CONCLUSION**

21      For the reasons stated herein, the Court **GRANTS** summary judgment on plaintiff's causes

22  of action for breach of contract, intentional infliction of emotional distress, negligence, and

23  ───────────────

24      [5] Defendant argues that the causes of action for IIED, tortious interference, and negligence all
fail because they are predicated on statements protected by the common interest privilege of California
Civil Code § 47(c). However, defendant's privilege arguments are problematic because the complaint

25  does not plead a speech-based tort. Plaintiff relies on a California Court of Appeal which applied the
privilege to preclude claims for IIED and negligent infliction of emotional distress, but that complaint

26  also included causes of action for libel and slander. <u>Terry v. Davis Cmty. Church</u>, 131 Cal. App. 4th
1534, 1551, 1558 (Cal. Ct. App. 2005). Applying the privilege to this case would require an extension

27  of <u>Terry</u> to facts where no underlying cause of action for libel or slander was pled. <u>See</u> <u>Kacludis v.</u>
<u>GTE Spring Commc'ns Corp.</u>, 806 F. Supp. 866, 872 (N.D. Cal. 1992) (applying the privilege to

28  dismiss a claim for slander per se, but dismissing claims for misrepresentation, IIED, and intentional
interference with economic advantage on other grounds).

1   intentional interference with prospective economic advantage.  Plaintiff has voluntarily dismissed

2   her cause of action for fraud.  Therefore, this Order **CONCLUDES** the litigation in this case.

3          IT IS SO ORDERED.

4

5   DATED:  February 8, 2008

6                                                        _____
                                                       Honorable Janis L. Sammartino
7                                                      United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28